**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**THE PROBATE COURT OF THE CITY OF WARWICK, by and through JUDITH A. LAWTON, JUDITH GRANT, CAROL LINCOLN, JANICE LEFFINGWELL, JOYCE HENDRICKS, JOHN KIEPLER, as executor of the Estate of Beverly Kiepler, JANIS FISHER, DAVID GILMORE and RAYMOND P. CYR, JR.,**

**Plaintiffs**

**v.** **C.A. No. 07-239S**

**BANK OF AMERICA CORP. as Co-Executor of the Estate of Magda Burt,**

**Defendant**

**PLAINTIFFS' OBJECTION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs hereby object to Defendant's Motion to Dismiss their Complaint. In support thereof, plaintiffs rely on the Memorandum of Law filed herewith.

Plaintiffs

JUDITH A. LAWTON and DAVID GILMORE
By their Attorneys,

/s/ Karen A. Pelczarski
/s/ Staci L. Kolb
Karen A. Pelczarski (#3357)
Staci L. Kolb (#5451)
BLISH & CAVANAGH, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Telephone: 401-831-8900
Facsimile: 401-751-7542
kap@blishcavlaw.com
slk@blishcavlaw.com

JOAN GRANT, CAROL LINCOLN,
JANICE LEFFINGWELL and
JOYCE HENDRICKS,
By their Attorney,

/s/ Joseph A. Keough Jr.
Joseph A. Keough Jr. (#4195)
Keough & Sweeney, Ltd.
100 Armistice Boulevard
Pawtucket, RI 02860
Telephone: 401-724-3600
Facsimile: 401-724-9909
jkeoughjr@keoughsweeney.com

JOHN KIEPLER executor u/w/o Beverly
Kiepler and JANIS FISHER,
By their Attorneys,

/s/ Mark A. Sjoberg
/s/ Jennifer A. Niedzinski
Mark A. Sjoberg (#2427)
Jennifer A. Niedzinski (#6842)
Sjoberg & Votta Law Offices
200 Centerville Road, Suite 4
Warwick, Rhode Island 02886
Telephone: 401-737-9696
Facsimile: 401-737-9119
mas@sjoberglaw.com
jan@sjoberglaw.com

RAYMOND P. CYR JR.,
By his Attorneys,

/s/ Richard Tallo
Richard Tallo (#0504)
P.O. Drawer 9007
Providence, Rhode Island 02940
Telephone: 401-726-1010
Facsimile: 401-726-3406
richard@pearlmanlawoffices.com

/s/ James A. Currier
James A. Currier (#0953)
1345 Westminster Street
Providence, Rhode Island 02909
Telephone: 401-861-2200
Facsimile: 401-421-2450
currlaw@myexcel.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing PLAINTIFFS' OBJECTION was filed with the Clerk of the United States District Court for the District of Rhode Island this 1st day of October, 2007 and is available for viewing and downloading to the following ECF registered counsel of record:

Mark A. Sjoberg, Esq./Sjoberg & Votta Law Offices
Jennifer A. Niedzinski, Esq./Sjoberg & Votta Law Offices
Joseph A. Keough Jr., Esq./Keough & Sweeney
Richard Tallo, Esq.
James A. Currier, Esq.
Steven E. Snow, Esq./Partridge Snow & Hahn
Carolyn Medina, Esq./Partridge Snow & Hahn

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THE PROBATE COURT OF THE CITY OF WARWICK, by and through JUDITH A. LAWTON, JUDITH GRANT, CAROL LINCOLN, JANICE LEFFINGWELL, JOYCE HENDRICKS, JOHN KIEPLER, as executor of the Estate of Beverly Kiepler, JANIS FISHER, DAVID GILMORE and RAYMOND P. CYR, JR.,** | : | |
| **Plaintiffs** | : | |
| **v.** | : | **C.A. No. 07-239S** |
| **BANK OF AMERICA CORP. as Co-Executor of the Estate of Magda Burt,** | : | |
| **Defendant** | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OBJECTION TO DEFENDANT'S MOTION TO DISMISS**

***Introduction***

The plaintiffs, the Probate Court of the City of Warwick, by and through Judith A. Lawton, Judith Grant, Carol Lincoln, Janice Leffingwell, Joyce Hendricks, John Kiepler, as executor of the estate of Beverly Kiepler, Janis Fisher, David Gilmore and Raymond Cyr, nine of the ten residuary beneficiaries of the estate of Magda L. Burt ("Decedent"), brought this civil action against defendant Bank of America Corp.[1] (the "Bank"), in its capacity as a co-executor of Decedent's will on its bonds under the authority of the Probate Court of the City of Warwick, Rhode Island ("Probate Court") pursuant to a Consent Order ("Consent Order") entered April 6,

[1]In its Memorandum of Law in Support of its Motion to Dismiss, the Bank claims that plaintiffs have sued the wrong defendant. Plaintiffs are willing to substitute the correctly named party for the Bank identified here. See Argument B., *infra.*

2006. A copy of the Consent Order is attached to the Complaint and here as Exhibit ("Ex.") A. The plaintiffs' Complaint has three counts: Count I - Suit on Bond; Count II - Negligence; and Count III - Breach of Fiduciary Duty. Despite agreeing to this action via the Consent Order, the Bank now moves to dismiss the Complaint based, in large part, on a statute of limitations defense. The Complaint was filed well within the statute of limitations period, however, and the Bank's Motion to Dismiss should be denied. Alternatively, equitable estoppel and/or judicial estoppel should apply to preclude the Bank from asserting a statute of limitations defense.

***Factual Background and Travel of the Case***

Decedent died testate on August 30, 1987. (Complaint, ¶ 15.) Thereafter, her will dated January 22, 1981 was admitted to probate and Rhode Island Hospital Trust National Bank ("RIHT") and Robert B. Gates ("Gates") were appointed co-executors thereof by letters testamentary issued by the Probate Court on October 8, 1987 in Estate No. 87-310. (*Id.*) The Bank is the admitted successor to RIHT as co-executor, although no filing in the probate court evinces the various corporate successions between RIHT and the Bank. (*Id.*, ¶ 19.) The co-executors each filed with the Probate Court a $2,500,000 appointment bond on or about October 8, 1987, and an additional $1,767,000.00 bond in June, 1988. (*Id.*, ¶¶ 17 and 21.)

The probate asset involved in this action is 2,256 shares of Class A Non-voting shares of common stock (the "Stock") of Nyman Manufacturing Company, a Rhode Island closely-held corporation ("Nyman"), owned by Decedent at the time of her death. Pursuant to Decedent's will, the Nyman Stock was to be distributed equally among ten residuary beneficiaries ("Beneficiaries"). (*Id.*, ¶ 22.)

For a number of years, litigation has existed in the Probate Court, the Rhode Island state courts, and the United States District Court for the District of Rhode Island, relating to

Decedent's estate and specifically the sale of the Stock to Nyman by the co-executors.[2] This litigation has consisted of numerous lawsuits against the Bank, all brought by different Beneficiaries of Decedent, either individually or in small groups, and all proceeding simultaneously in the various courts throughout the State of Rhode Island. They include: *Kiepler v. Gates, et al.*, C.A. No. KC98-337; *Burt, et al. v. Rhode Island Hospital Trust National Bank, et al.*, C.A. No. PC02-2243, *Grant, et al. v. Nyman, et al.*, C.A. No. PC 03-2893 and *Lawton v. Bank of America Corp., et al.*, U.S.D.C.R.I., C.A. No. 05-0970. As successor to RIHT, the Bank is a defendant in each of these pending actions which make essentially the same allegations of breach of fiduciary duty and neglect as are made in the instant action. (*See* Ex. B, Complaint *Kiepler v. Gates, et al.*, C.A. No. KC98-337; Ex. C, Complaint *Burt, et al. v. Rhode Island Hospital Trust National Bank, et al.*, C.A. No. PC02-2243; Ex. D, Complaint *Grant, et al. v. Nyman, et al.*, C.A. No. PC 03-2893 and Ex. E, Complaint, *Lawton v. Bank of America Corp., et al.*, U.S.D.C.R.I., C.A. No. 05-0970.)

Incident to control conferences among counsel in the Kent County Superior Court in *Kiepler v. Gates, supra,* starting in 2005, a procedural formula was negotiated to address in a single forum all the Beneficiaries' claims against the co-executors involving the probate of Decedent's estate. Admittedly, the Bank wished to avoid having to defend the many lawsuits

---

[2]A court may look to matters of public record in ruling on a motion under Fed. R. Civ. P. 12(b)(6) without converting the motion into one for summary judgment. *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993). Courts have routinely regarded documents from prior state court cases as public records. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (collecting cases); 5A Wright & Miller, *Federal Practice and Procedure* § 1364, at 475-80 (1990) (court judgments and orders, judicial notice of prior pleadings, and transcripts of prior court proceedings, among other evidence, may be taken into account in deciding a Rule 12(b)(6) motion). Here, the documents submitted as exhibits are pleadings from other pending matters related to Decedent's estate. In fact, many of the attached exhibits were prepared by and/or filed by the Bank itself. As such, they are part of the pleadings. *Watterson*, 987 F.2d at 4.

and sought to have just one action that would bind all of the Decedent's Beneficiaries. (Ex. F, Complaint, ¶ 11, *Bank of America, N.A. et al. v. Roland W. Burt, Jr.*, C.A. No. 06-394-S-LDA.)

The Bank and all the Beneficiaries eventually reached an agreement that would allow a single action on the Bank's Probate Court bonds to be filed in the United States District Court for the District of Rhode Island, with no admission of liability or of breach of fiduciary duty or bond obligation, preserving the rights and defenses of all parties, and staying or dismissing all other actions. (*Id.*, ¶ 12.) The agreement that had been reached for the single action on the bond was memorialized in a Consent Order, which was signed by counsel for all of the Beneficiaries and by the Bank. (*Id.*, ¶ 13. *See also* Ex. A.) The Consent Order was presented to Judge Isherwood of the Probate Court of the City of Warwick on April 6, 2006. (*Id.*, ¶ 15.) Having been previously informed of the negotiations between the parties, Judge Isherwood reviewed the proposed Consent Order, signed it and it was entered. (*Id.*, ¶ 16.) No objection was made by any party to the entry of the Consent Order. (*Id.*)

Thereafter, one of the Beneficiaries, Roland W. Burt, Jr. ("R. Burt"), acting *pro se*, unexpectedly objected to the Consent Order and filed an appeal of such order in the Kent County Superior Court. (Ex. G, Appeal.) In its Motion to Dismiss that Appeal, the Bank recognized that "the purpose of the Consent Order was to advance this case past a procedural posture that could require this court to conduct several consecutive trials to resolve the underlying case filed by Beverly L. Kiepler, *Keipler v. Bank of America, C.A.* No. 98-337." (Ex. H, Memorandum of Law filed by the Bank in support of its Motion to Dismiss, p. 2.) The Bank also alleged that the Consent Order "embodies the agreement of the Bank and all [Decedent's Beneficiaries] to join in a single action, to be brought in federal court, to adjudicate all issues necessary for resolution of the numerous claims brought separately by individual beneficiaries, or small groups of them."

(*Id.*) The remaining beneficiaries of Decedent's estate (all plaintiffs in the pending matter) moved to intervene in that matter and joined in the Bank's Motion to Dismiss the Appeal.

Prior to a decision on their Motions to Dismiss, these remaining beneficiaries and the Bank filed a declaratory judgment action in this Court against R. Burt, captioned *Bank of America, N.A. et al. v. Roland W. Burt, Jr.*, C.A. No. 06-394-S-LDA. (Ex. F.) In the declaratory judgment action, the remaining Beneficiaries and the Bank argued that "Mr. Burt's appeal of the Consent Order and his refusal to stay or dismiss his other actions without prejudice substantially impairs the ability of all of the other Beneficiaries and the Bank to proceed with the single action on the bond in federal court." (*Id.*, ¶ 19.) Ultimately, the Consent Order was declared valid by judgment of the United States District Court for the District of Rhode Island entered April 4, 2007 and by order of the Kent County Superior Court entered April 17, 2007 *sub nom. Roland W. Burt, Jr. v. Robert Gates et al.*, C.A. No. KP-2006-0406. (Ex. I and J.)

Thereafter, as was contemplated and intended by the Consent Order, the plaintiffs filed the within action. However, rather than answering the Complaint, the Bank filed the pending Motion to Dismiss which seeks to effectively erase all of the past collaborative efforts by the plaintiffs and the Bank to consolidate the pending litigation in one forum for a final resolution on the merits.

## *Argument*

### A. THE APPLICABLE LEGAL STANDARD.

In ruling on a motion to dismiss, this Court should construe the complaint in the light most favorable to the plaintiffs, taking all well-pleaded allegations as true and giving the plaintiffs the benefit of all reasonable differences. *E.g. Schock v. United States of America*, 21 F. Supp.2d 115, 118 (D.R.I. 1998), *citing Negron-Gaztambide v. Hernandez-Torres*, 35 F.3d 25, 27

(1st Cir. 1994). Dismissal under Rule 12(b)(6) is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id., citing Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In the present matter, taking all well-pleaded allegations as true and giving the plaintiffs the benefit of all reasonable differences, this Court should deny the Bank's Motion to Dismiss.

**B. PLAINTIFFS SEEK TO SUBSTITUTE DEFENDANTS.**

As part of the Bank's Motion to Dismiss, it alleges that plaintiffs named the wrong corporate entity as the defendant in this action:

> As an initial (and, admittedly, correctible) problem, Plaintiff has sued the wrong party. Plaintiff has sued "Bank of America Corp." in its capacity as Co-Executor of the Estate of Magda Burt. Bank of America Corp. is a holding company for Bank of America, N.A., the entity which does business as Bank of America, and the entity which has served as Co-Executor of the Estate of Magda Burt." (See Memorandum of Law in Support of Bank of America Motion to Dismiss Complaint, p. 3)

However, under the Federal Rules of Civil Procedure, misjoinder of parties is not a ground of defense and, therefore, not a ground for dismissal. *Diepen v. Fernow*, 1 F.R.D. 378 (W.D.Mich. 1940). The suitable remedy in such a case is to drop the party who has been improperly joined. *Id.* When a real party in interest is not joined as a party plaintiff, this real party in interest may be added under the provisions of Rule 21 of the Federal Rules of Civil Procedure. *Askey v. C. & M. Service*, 45 F.R.D. 242 (M.D.Pa. 1968).

Thus, in order to correct this "admittedly correctible problem," the plaintiffs have filed a motion, and supporting memorandum, to add "Bank of America, N.A." as the proper party defendant, and to remove "Bank of America Corp." as a party to this suit pursuant to Rule 21 of the Federal Rules of Civil Procedure. The plaintiffs hereby incorporate said Memorandum of Law filed in support of thereof.

## C. THE COMPLAINT IS NOT BARRED BY THE STATUTE OF LIMITATIONS.

As set forth more fully below, consistent with Rhode Island probate practice and procedure, and the law of the case represented by the Probate Court's orders and decrees in Decedent's estate, the fiduciaries remain liable upon their bonds unless and until they are discharged by the Probate Court as the obligee on such bonds, without time limitation. As the twentieth anniversary of Decedent's death just passed, her estate has not been administered as promptly or efficiently as contemplated by state law for a typical estate. Her fiduciaries bear some measure of responsibility, if not primary responsibility, for the estate's pace and their failure to yet bring the estate to closure. There is no express statute of limitation under Rhode Island law for claims on probate fiduciary bonds for that reason. In states where such an affirmative defense has been invoked, limitation deadlines, if any, have not been measured from individual acts or omissions within the period of administration, but from the final accounting to the probate court or the final judicial ascertainment of the personal representative's liability. For example, the fiduciary's accounting may raise the issue of waste prompting removal, the successor fiduciary *then* has a certain limitation period to recover for that waste.

Contrary to the Bank's contention that its bond to the Probate Court is essentially a fidelity bond, actionable only for such defalcations as misappropriation, the bond's scope is actually much broader. Under R.I. GEN. LAWS §§ 33-17-1 *et seq.*, the Bank "before entering upon the execution of [its] trust" was charged upon its bond to "faithfully perform [its] duties according to law as such fiduciary" from the time of its inventory (*i.e.*, taking charge of and marshaling probate assets as soon after appointment and qualification as possible with values determined as of date of Decedent's death) until the close of the estate (*i.e.*, by final accounting measured from the inventory with gains and losses, income and expenses, debts and charges,

costs and fees, and final distribution disclosed), which has yet to occur – all the while administering the estate "according to law and the will of the testator." R.I. GEN. LAWS § 33-17-1 and § 33-17-2. Any act or omission of a fiduciary cognizable by a probate court in deciding to allow or disallow an accounting is thus actionable on that fiduciary's bond. Title 33 of the Rhode Island General Laws regarding Probate Practice and Procedure uses interchangeably the terminology of "trust" and "duty" with "breach" and "neglect" in describing a personal representatives' responsibility and liability. Thus, under the authority of the Consent Order of the Probate Court, as the obligee on the Bank's bond, the plaintiffs can and have prosecuted the instant case for the Bank's defalcation, neglect and breach of fiduciary duty.

Indeed, it is a mystery what the Bank hopes to accomplish seeking to dismiss the instant suit for which it bargained. The choice of forum and the preference to defend a single action was the Bank's. In fact, if this action is dismissed for anything less than a substantive adjudication of the facts and law presented, then the impossibility of performing the terms and conditions of the Consent Order will have been established and the Beneficiaries will be free to resume prosecution of their individual actions in the many forums in which they were originally brought.

Therefore, for the reasons set forth more fully below, this Court should enforce the Probate Court Consent Order against the Bank, just as it did on the Bank's request against R. Burt, deny with prejudice the Bank's motion to dismiss, and allow the instant suit on the Bank's bond to proceed through pleading, discovery and trial of the genuine issues of material fact presented.

**1. The Statute of Limitations for a Suit on an Executor's Bond Starts to Run Only When There Has Been a Final Judicial Ascertainment of the Principal's Liability.**

The statute of limitations for claims on a fiduciary's bond begins to run upon the final judicial ascertainment of the liability of the personal representative of an estate. W.J. Dunn, Annotation, *When Statute of Limitations Begins to Run Against Action on Bond of Personal Representative*, 44 A.L.R.2d 807, §2 (1955). The time of "final judicial ascertainment of the liability" means: (a) the date of the only decree of distribution entered in an estate, (b) the date of the last of a series of such decrees of distribution, (c) the date of the order allowing the final account of a personal representative, or (d) the date of a decree surcharging the personal representative and subsequently settling his accounts as amended. *Id.* Essential to each definition of "judicial ascertainment of liability" is the requirement of a final accounting of the administration of the decedent's estate which, establishes the liability of the fiduciary (with or without fault) to the beneficiary. For example, a beneficiary's right to recover his or her inheritance from the fiduciary commences with the court's allowance of the final accounting and order of distribution. Further, the removal of a fiduciary generally follows a citation to account and commences the successor fiduciary's and/or interested parties' right, with probate court approval, to claim on the fiduciary's bond.

States that have addressed this issue have held that statutes of limitation do not run from each act or omission of a fiduciary during administration, but from the fiduciaries' accounting once acted upon by the court. "Liability" in this sense does not necessarily suggest wrongdoing, but acknowledges that a fiduciary charges itself with probate assets on its inventory and remains liable for them until discharged upon the allowance of its final account. R.I. GEN. LAWS §§ 33-9-1; 33-9-4; 33-14-1; and 33-17-1; *Browning v. Liberty*, 58 R.I. 507, 193 A. 496 (1937); *Hayes v.*

*Welling*, 35 R.I. 76, 85 A. 630 (1913). The logic of this rule underlies the probate statutes. In fact, most jurisdictions that have addressed this issue conclude that a claim against a personal representative's bond accrues either: (1) when there is a final order, or (2) when a successor fiduciary has been appointed by the court on the removal, resignation or death of the prior fiduciary. *See, e.g., In re Estate of Green*, 816 A.2d 14 (D.C. 2003). The weight of authority, including approximately twenty jurisdictions, adopts the this rule.[3] *Id.* at 44 A.L.R.2d 807, §1(b).

In *Alexander v. Bryan*, 110 U.S. 414 (1884), the United States Supreme Court held that an Alabama statute of limitations[4] on an action against an executor's surety bond did not start to run until the first judicial ascertainment of the executor's default. In *Alexander,* the first judicial ascertainment of default was a decree in an equity action against the executor brought by the legatees under the decedent's will. The Court stated that "[t]here must be something more than an auditing of accounts, or an ascertainment or judgment that the distributee's share is so much, or that the distributee is entitled to so much. There must be a decree ordering payment, and on

---

[3]The following are examples of cases that support the proposition of "final judicial ascertainment:" *Alexander v. Bryan*, 110 U.S. 414, 4 S.Ct. 107 (1884); *Fretwell v. McLemore*, 52 Ala. 124 (1875); *Wright v. Lang*, 66 Ala. 389 (1880); *George v. Elms*, 46 Ark. 260 (1885); *Rafferty v. Mitchell*, (Cal. 1935); *Elkins v. Bryson*, P.2d 301 (Cal. 1936); *In re Estate of Green*, 816 A.2d 14 (D.C. 2003); *Frank v. People*, 35 N.E. 530 (Ill. 1893); *People v. Ochiltree*, 48 Ill.App. 220 (1892); *Tucker v. Stewart*, 147 Iowa 294, 126 N.W. 183 (1910); *In re Park's Estate*, 75 P.2d 842 (Kan. 1938); *Tucker v. Aetna Cas.& Sur. Co.*, 110 S.W.2d 649 (Ky. 1937); *Hall v. Courtney*, 165 So. 458 (La. 1936); *Cook v. Titcomb*, 97 A. 133 (Me. 1916); *Ganser v. Ganser*, 86 N.W. 18 (Minn. 1901); *Burns v. New Amsterdam Cas. Co.*, 285 N.W. 885 (Minn. 1939); *Williams v. State*, 10 So. 52 (Miss. 1891); *The State, to Use of Whaley v. Blackwell*, 20 Mo. 97 (1854); *Betts v. Avery*, 61 N.Y.S. 525 (N.Y. 1899); *Burgwyn v. Daniel*, 20 S.E. 462 (N.C. 1894); *In re Hamm*, Nos. 2001-G-2363, 2001-G-2366, 2002 WL 819154 (Ohio App. 11 Dist. 2002); *Howard v, Jeffrey*, 268 P.2d 897 (Okla. 1953); *Beatty v. National Sur. Co.*, 128 S.E. 40 (S.C. 1925); *Fouche v. Royal Indem. Co. of N.Y.*, 47 S.E.2d 209 (S.C. 1948); *Franklin's Adm'r v. Depriest*, 13 Gratt. 257 (Va. 1856); *Sharpe's Exr. v. Rockwood*, 78 Va. 24 (1883).

[4]The Code of Alabama states that "actions against the sureties of executors for any misfeasance or malfeasance of their principal must be brought within six years after the cause of action has accrued, and not afterwards, the time to be computed from the act done or omitted by their principal, which fixes the liability of the surety." *Alexander*, 110 U.S. at 416, 4 S.Ct. at 108 citing ALA. CODE §§ 3223, 2898, 3226, 2901.

which process to collect can issue against the principal." *Id.* at 418-419 *citing Gilbreath v. Manning*, 23 Ala. 413, 418 (1853).

Following such reasoning in *Townes v. Townes*, No. 88-124-II, 1988 WL 95268, at *3 (Tenn.Ct.App. Sept. 16, 1988), the Tennessee Court of Appeals held that "so long as the estate is being administered the statute of limitations does not begin to run against the surety on the administrator's bond." In *Townes*, an action against the administratrix's bond was brought for her failure to file state and federal tax returns. The surety unsuccessfully argued that the statute of limitations began to run when the tax returns were due. The court found that the six year period of limitations in Tennessee did not accrue until the administratrix's purported final settlement.[5]

Similarly, in *In re Park's Estate*, 75 P.2d 842 (Kan. 1938), the administrator of decedent's estate allegedly failed to sell stock within the time prescribed by statute. The administrator and his surety contended that the cause of action accrued at the end of the statutory period when the stock should have been sold and that the heirs' action on bond was barred by the statute of limitations measured from that date. The court disagreed stating that:

> No reason appears why the estate could not have been closed within the statutory period, and the administrator cannot be permitted to urge laches or the statute of limitations against a claim of maladministration by the heirs by reason of the lapse of time caused by his delay in filing his petition for final settlement . . . . The heirs, on the other hand, had a right to await final settlement and make such claims then against the administrator as they might have because of his acts in the management of the estate. 75 P.2d at 848 (footnote omitted).

---

[5]Under TENN. CODE. ANN. § 28-3-109 (2007), actions against sureties of executors and administrators for nonfeasance, misfeasance, and malfeasance in office, must be filed within six years after the cause of action accrued.

Likewise, in *In re Estate of Green,* 816 A.2d 14 (D.C. 2003), the District of Columbia Court of Appeals found similarly. The statute of limitations provided that a suit on an executor's or administrator's bond must be brought within five years after the time the right to maintain the action accrues. D.C. CODE §12-301(6). Construing the term "accrues" in this statute, the court held that the claim on the bond of a personal representative "accrues" when the final account is filed and approved by the probate court. 816 A.2d at 20. In reaching that conclusion, the court looked first to the jurisdiction's probate statutes[6] and then its implementing regulations in effect at the relevant time.[7] Finding no assistance there, the court relied on D.C.CODE §25-2804 which states:

> A person appointed by order or decree of the court to a fiduciary office may not discharge his bond for the due performance of his duties, by receipts, releases, or acquittances from himself, as attorney for parties interested, to himself as fiduciary; but the funds or estate for the application whereof he is responsible shall be considered as remaining in his hands, and the bond shall continue in force as against both principal and sureties until the funds or estate are fully accounted for and paid over or delivered to the parties interested therein, or their attorney, other than himself.

---

[6]D.C.CODE § 20-701(a) specifies in pertinent part: "A personal representative . . . is a fiduciary who . . . is under a general duty to settle and distribute the estate of the decedent in accordance with the terms of the will . . . as expeditiously and efficiently as is prudent . . ." D.C.CODE §§ 20-721 - 724 requires a personal representative to file accounts of the estate including an initial account and subsequent account, at specified time periods. D.C.CODE § 20-725 authorizes the removal of a personal representative upon failure to file an account unless each heir or legatee signs a written waiver filed with the Register of Wills. D.C.CODE § 20-526 mandates the removal of a personal representative for failure without a reasonable excuse, to perform any material duty of such office and provides for the appointment of a successor representative. D.C.CODE § 20-1301 provides that the approval of a final account automatically closes the estate and shall terminate the appointment of the personal representative if the same is requested and approved by the court.

[7]Implementing regulations under the District of Columbia's Superior Court Rules of the Probate Division require, in part, that a personal representative must file a bond, file accounts, and provides for the removal of a personal representative who defaults on his duties. Sup. Ct. Probate Div. R. 104, 114 and 121.

From this statute, the court deduced that the administrator's bond remained in effect until the final statement of account was filed and approved. Thus, the claim on the bond accrued at that time. 816 A.2d at 20. The court further found that the probate code and implementing rules were not inconsistent with its opinion, but was consistent "with that of jurisdictions in twenty states which have considered the question presented in this matter." *Id.*

No Rhode Island statute specifies the limitation period of an action against a personal representative's bond. Thus, R.I. GEN. LAWS § 9-1-13(a) which provides that "all civil actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not thereafter," is the applicable statute here. The cause of action in this case "accrued" when the Probate Court gave its authorization to bring a suit on the co-executors' bonds on April 6, 2006 and not before. This is the first "judicial ascertainment of liability" since the co-executors have yet to file a final account. The lack of a final account was contemplated by the parties and the Probate Court in the Consent Order given the practical consideration that probate allowance or disallowance of a final account would be appealable *de novo*, R.I. GEN. LAWS § 33-23-1, and would further delay estate administration, adding yet another state court action to the litigation involving Decedent's estate. For the very reason of judicial economy, the Probate Court held the Bank's interim account *nisi*, did not discharge the Bank on its bond, and authorized a suit on the Bank's bond to commence in the forum of the Bank's choosing.

The Rhode Island bond statute makes clear that an executor is charged with the faithful administration of a decedent's estate from beginning (*i.e.*, the inventory) to end (*i.e.*, the account), according to the law and the testator's will. R.I. GEN. LAWS § 33-17-1. Moreover, R.I. GEN. LAWS § 33-14-1 requires that: "[e]very executor and administrator . . . shall make out and return to the probate court, **upon the completion of administration**, and at such other times as

shall be required by the court ... an account relative to the estate in his or her hands." (emphasis added). It is the settlement of the executor's accounts by the probate court, or on appeal, that ends the estate and is final and conclusive on all interested parties. R.I. GEN. LAWS § 33-14-11. In this regard, the Rhode Island Supreme Court has held that the determination of certain issues involving an executor's inventory, including transactions related thereto, are "not finally settled until his account is actually allowed." *Browning v. Liberty*, 58 R.I. 507, 514, 193 A. 496, 489 (1937). Implicit is the rationale that a personal representative has a continuing duty to faithfully perform his or her duties and fulfill his or her obligations to the probate court, heirs and/or beneficiaries of the decedent's estate until he or she accounts to and is discharged by the probate court. The personal representative cannot take sanctuary in the passage of time from particular acts or omissions when he controls the process of administration and such acts or omissions may not be officially known without an accounting to the Probate Court. Therefore, the transactions as alleged in the Complaint are still open for question as contemplated by the Probate Court in the Consent Order.

The Court's holding in *Fretwell v. McLemore*, 52 Ala. 124 (1875), is instructive of the policy and rationale behind a limitations period that does not accrue until a final judicial ascertainment of a personal representative's liability. That case stated:

> The administration or guardianship is treated as an entirety, having its inception in the grant of letters, and continuing until a final settlement, or until a termination of the authority the letters confer. The administration necessarily comprises many separate acts and transactions, all of which impose liability, or all of which rather fall necessarily within the liability the bond creates. The condition of the bond is general, for the performance of all such duties as are or may be imposed by law. This condition, according to its literal import, is broken, whenever the principal neglects or violates any duty the law imposes. For such neglect or violation the surety is chargeable by virtue of the condition of the bond. They often furnish cause for removal of the principal and the revocation of his authority. Of themselves they do not create a cause of action against, or fix the liability of the

> surety. Before any cause of action arises against the surety at law, and before the liability is fixed at law or in equity, there must be a judicial ascertainment of the default of the principal. From the period the default is thus ascertained, the statutory bar in favor of the surety must be computed. The judicial ascertainment is conclusive on the surety, in the absence of fraud or collusion, when made on the final settlement of the administration in the court of probate. If it is a judgment at law in favor of a creditor, it is conclusive, except as to the existence of assets, or an actual *devastavit*. The judicial ascertainment creates the cause of action against the surety, authorizing the enforcement of the liability imposed by the bond. The theory on which statutes of limitations rest is, that the party to be affected by them has a right to prosecute his cause of action, from the day on which the bar commences. This right cannot be ascribed as to the surety of an executor or administrator, until the liability of the principal is ascertained. If the bar of the statute, as to such surety, should be regarded as commencing from any day prior to this ascertainment, it must be from each default of the principal. Each default must then be considered as fixing the liability of the surety, and as giving a cause of action against him. From liability for a *devastavit* committed today, the statute would commence to run. From liability for a *devastavit* committed twelve months hence, the bar would commence to run from its commission. Each *devastavit* would create a cause of action, and the period for the commencement of the bar would be as various as the times of their commission. We cannot adopt this construction of the statute. It would render it almost impracticable of application, and work serious injustice to those having a right to rely on the bond, as a continuing security for the liability of the principal, unaffected by the operation of the statutes of limitation, until they have a right to sue on it. 53 Ala. at 136-137 (citations omitted).

As this holding articulately suggests, the Bank's contention that the general ten year statute of limitations should run from each of its acts and omissions over the past twenty years is untenable. The Bank is liable on its bond until it is discharged. The Consent Order makes it clear that has yet to occur. The Bank could have filed a final accounting and sought the discharge of its bond. It did not, and stipulated to having their acts and omissions adjudged in this forum. Therefore, the Bank's Motion to Dismiss should be denied and this action should be permitted to proceed as contemplated in the Consent Order.

**2. Alternatively, the Bank Should Be Equitably Estopped from Asserting a Statute of Limitations Defense.**

Even if the statute of limitations should be calculated from November 1995, as the Bank contends, the Bank should be equitably estopped from asserting a statute of limitations defense. It is black letter law that statutes of limitations are not jurisdictional and are subject to equitable principles. *E.g., Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96 (1990); *Mercado v. Ritz-Carlton San Juan Hotel, Spa and Casino,* 410 F.3d 41, 48 (1st Cir. 2005). Under the circumstances presented here, even if this Court finds that the applicable statute of limitations has expired, the doctrine of equitable estoppel should prevent the Bank from asserting this defense. Indeed, it is difficult to imagine a situation where equity would be more aptly applied than here.

Equitable estoppel is a judicially-devised doctrine which precludes a party to a lawsuit because of some improper conduct on that party's part from asserting a claim or defense, regardless of its substantive validity. *F.D.I.C. v. Roldan Fonseca,* 795 F.2d 1102, 1107 (1st Cir. 1986). In order to establish equitable estoppel, a plaintiff must prove: "an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act to his injury." *Southex Exhibitions, Inc. v. Rhode Island Builders Ass'n Inc.*, 279 F.3d 94, 104 (1st Cir. 2002)(internal quotations and citations omitted). "Courts invoke equitable estoppel when a defendant's conduct causes a plaintiff to delay bringing an action or pursuing a claim he or she was entitled to initiate by law." *Kelley v. National Labor Relations Board*, 79 F.3d 1238, 1247 (1st Cir. 1996). By their very character, claims of estoppel tend to be case-specific. *Clauson v. Smith*, 823 F.2d 660, 663 (1st Cir. 1987). "The nature of the representations and of the conduct of

the defendant are of crucial significance in determining whether the plaintiff is to be allowed to invoke this equitable principle." *Id., f.n. 3, citing Sanchez v. Loffland Bros. Co.*, 626 F.2d 1228, 1231. Moreover, for an estoppel claim to arise, "it is not necessary that the defendant intentionally mislead or deceive the plaintiff, or even intend by [his] conduct to induce delay." *Id., citing Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067, 1071 (7th Cir.1978).

In this case, it was the conduct of the Bank that clearly prohibited the plaintiffs from instituting this action within the applicable statute of limitations. The Bank itself created this impediment by refusing to step down as a co-executor. Starting back in 1998, Beneficiaries brought suit against the Bank seeking to compel the Bank to step down as co-executor. The Bank resisted. Not surprisingly, the Bank also refused to either bring an action against itself or to allow one to be brought against it for breach of fiduciary duty. The Bank only entered into negotiations and agreed to the terms of the Consent Order *after* the statute of limitations passed.[8] It would be entirely inequitable to allow the Bank to engage in a certain pattern of conduct which prohibited the plaintiffs from filing an action on the bond until the statute of limitations expired, and then be allowed to benefit from the protections of that statute.

Nor is there any discernable prejudice to the Bank by applying the doctrine of equitable estoppel here. Various actions were pending in several different venues, including Rhode Island Superior Court in Providence County, the Rhode Island Superior Court in Kent County, the Warwick Probate Court, and this Rhode Island District Court, all prior to the time the statue of

[8]The Bank argues that the Consent Order specifically "reserves all its claims and defenses in said capacity, including those which have been asserted in various Superior Court Actions brought by individual Beneficiaries." (*See* Ex. A.) To now argue that such reservation includes a statute of limitations defense in this action is absurd. The plaintiffs would never have agreed to going through the exercise of filing this Complaint, while they have other actions pending against the Bank in various tribunals for virtually the same claims, had they believed their claims would not be adjudicated on the merits in one forum.

limitations was due to expire. In each of the actions, virtually the same claims of negligence and breach of fiduciary duty that are pending here were asserted against the Bank. The Bank has been aware of the claims against it and has even been litigating those claims for several years. The filing of this action in federal court was intended to streamline this excessive and repetitive litigation as an accommodation to the parties, but primarily as a benefit to the Bank, who would otherwise have had to continue to litigate in all of the various venues. In fact, it is difficult to understand why the Bank would, after receiving this advantage, turn around and file a motion to dismiss on statue of limitations grounds which will effectively require the Bank to then go back and continue to litigate the same suit in several different forums. Accordingly, equitable estoppel should be applied to preclude the Bank from now asserting a statutes of limitations defense.

**3. Alternatively, Judicial Estoppel Applies to Toll the Statute of Limitations.**

Alternatively, the doctrine of judicial estoppel should be applied to prevent this matter from being time-barred. In *Patriot Cinemas Inc. v. General Cinema Corp.*, 834 F.2d 208 (1st Cir. 1987), the First Circuit explained that judicial estoppel applies to preclude a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another. The primary concern of the doctrine of judicial estoppel is to protect the integrity of the judicial process. *Id.* at 211 - 214.

In *Patriot Cinemas*, plaintiff represented to a state court that it would not prosecute certain state-law claims, and then later attempted to convince a federal court to take action which would have resulted in allowing the plaintiff to pursue the very claims it had previously abandoned. In refusing to endorse such practice, the District Court noted that the plaintiff had, in effect, made a "bargain with the [state] superior court." 834 F.2d at 213. Having obtained a litigation benefit as a result of that bargain, the court was unwilling to disallow the plaintiff the

burden of that bargain, which would have undermined the "integrity and efficacy" of the judicial system. *Id.* at 213-14. *See also Schock v. United States*, 56 F.Supp.2d 185 (D.R.I. 1999)(judicial estoppel applied to prevent a plaintiff from changing a previously identified contract claim into one that lies in tort); *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 12-13 (1st Cir. 1999)(defendant who told arbitration panel that state law controlled was judicially estopped from arguing that federal law controlled).

The need for the application of judicial estoppel is even more pronounced here. In this case, the Bank stipulated to being subject to this suit in this forum. *See* Exhibit A, the Consent Order. The language of the Consent Order is clear:

> [T]he residuary beneficiaries under Decedent's will ("Beneficiaries") are hereby authorized:
>
> a. To sue on [the Bank's] bonds to this Court as Executor in a single civil action in the United States District Court for the District of Rhode Island, whether by amendment of a pending action or initiation of a new action at the Beneficiaries discretion.

*Id.* Moreover, when R. Burt challenged the validity of the Consent Order, the Bank fiercely opposed his challenge in both the Kent County Superior Court and this District Court. In pleadings filed in both cases on behalf of the Bank, the Bank asserted, among other things: that it had "agreed to a proposal transferring all remaining lawsuits for resolution in the Federal District Court for the District of Rhode Island" (Ex. H, Bank's Memorandum of Law in Support of Motion to Dismiss R. Burt's Appeal, page 3); that it "wished to avoid having to defend the many lawsuits and sought to have just one action that would bind all the beneficiaries" (Ex. F, Complaint ¶ 11); that the "Bank and the Beneficiaries eventually reached an agreement that would allow a single action on the Bank's bond in the United States District Court for the District of Rhode Island, with no admission of liability or of breach of fiduciary duty or bond

obligation, preserving the rights and defenses of all parties, and staying or dismissing all other actions" (*Id.*, ¶ 12; *see also* Ex. K, Statement of Undisputed Facts, filed by the Bank in support of its Motion for Summary Judgment against R. Burt, ¶ 13.) The Bank's change in position to now claim that such suit is barred by the statute of limitations undermines the integrity and efficacy of the judicial system and is therefore prohibited by the doctrine of judicial estoppel.

The Bank initially agreed to the idea of a streamlined litigation at a time when a motion for summary judgment was pending against it in Kent County Superior Court, and at least one other case pending against it was on the trial calendar in Providence County Superior Court. By agreeing to litigate these claims in one singe action, the Bank achieved the advantage of delaying potentially multiple adverse decisions against it and having to try more than one case involving virtually the same issues before different courts. The Bank then aggressively defended the validity of the Consent Order before two separate tribunals. The Bank should not now be permitted to enjoy any benefits of changing its position before this Court. Accordingly, judicial estoppel should apply to prevent the Bank from asserting the defense that the pending action is barred by the statute of limitations.

### D. THE COMPLAINT BROADLY ENCOMPASSES THE BANK'S DEFALCATIONS, BREACHES OF FIDUCIARY DUTY AND NEGLIGENCE WHICH ARE ALL RECOVERABLE ON ITS BONDS.

A personal representative of a decedent's estate is charged with the duty to preserve and manage the estate property and to protect the same from depletion, unlawful demands and willful waste. *31 Am. Jur. 2d Executors and Administrators §497.* Accordingly, an executor has a fiduciary duty to "bargain for the rights of all decedent's beneficiaries and to turn over to them their appropriate share of any proceeds." *Id.* The fiduciary acts under a general duty to take into account the beneficiaries' interests and not merely act as an agent of the probate court. *Id.* "An

executor satisfies this fiduciary obligation to manage the estate in the same manner as his own affairs if he acts in good faith and with reasonable care." *Id.*

The conditions of an executor's bond are broadly enumerated in R.I. GEN. LAWS §§ 33-17-1 *et seq*. It is not a restrictive list as the Bank suggests, but encompasses the entire scope of administration from inventory (where the fiduciary charges itself with probate assets appraised as of the decedent's date of death[9]) to account (where the fiduciary accounts to the probate court and beneficiaries for its performance and obtains an order of distribution to the beneficiaries[10]). It is not the mere filing of these essential documents that satisfies the fiduciary's obligations, rather the substance of these documents evince whether the fiduciary has faithfully executed its trust or not.

Rhode Island probate statutes generally refer to an executor's position as a "trust," to its duty as "faithful performance," and to the breach of that duty as neglect. A fiduciary qualifies for its appointment by filing bond "before entering upon the execution of [its] trust". R.I. GEN. LAWS § 33-17-1 and § 33-8-1. The failure to do so within 30 days of appointment may be adjudged a declination of the trust. R.I. GEN. LAWS § 33-17-5. The bond's condition requires that the executor "shall faithfully perform [its] duties according to law as such fiduciary." R.I. GEN. LAWS § 33-17-2 and § 33-17-1(1). That condition is recited in the appointment and supplemental

---

[9]R.I. Gen. Laws § 33-9-1. **Return of inventory of estate**. Every administrator and every executor, shall, within ninety (90) days after his or her appointment or such longer period as may be allowed by the probate court, return to the probate court, under oath, a true inventory of all the personal property, both tangible and intangible, and of all claims, rights, causes of actions and other assets, other than real property, of the deceased, with an appraisement thereof as of the date of the decedent's death.

[10]R.I. Gen. Laws § 33-14-1. **Times when accounts required**. Every executor and administrator . . . shall make out and return to the probate court, upon completion of the period of administration . . . an account relative to the estate in his or her hands, with a statement of the liquidated balance that may be due to or from him or her.

bonds that were executed and filed by the Bank's predecessor, RIHT, in its capacity as co-executor of Decedent's Will. (Ex. L, Bonds.)

Faithful performance of the executor's trust is conversely defined by its breach or "unfaithful administration." R.I. GEN. LAWS § 33-17-17. It provides:

> **Decree of unfaithful administration**. If any executor or administrator shall neglect or refuse to raise money out of the estate by collecting debts due or by selling the personal estate, or the real estate, if need be, and has power, or can obtain leave, to sell the same, or shall neglect or refuse to pay over what he or she has in his or her hands to the several creditors of the testator or intestate whose claims have been filed and allowed or proved according to law, or **shall otherwise fail to perform his or her duties as executor** or administrator, and, after citation before the probate court, shall fail to show reasonable cause therefor, the court may decree that he or she is guilty of unfaithful administration; and **thereupon an action may be brought upon the bond** of the executor or administrator by any creditor who may have been damnified thereby. (emphasis added).

Likewise, grounds for the executor's removal is defined in R.I. GEN. LAWS § 33-18-2. It provides:

> **General grounds for removal of fiduciary**. Whenever an executor, administrator, or guardian **shall for any cause become incapable of executing his or her trust**, or **shall neglect or refuse to do the duties of the trust**, or **shall waste the estate** of his or her ward or that on which he or she administers, the probate court, upon petition, and after hearing, may remove the executor, administrator or guardian from office and appoint an administrator or guardian in place of the person so removed, and take such other action as occasion may require. (emphasis added).

It is clear that an executor's breach of its trust by refusal or neglect is actionable on its bond. The Bank's contention that a negligence claim does not lie against it is baseless. It is also ironic given the travel of this case. The Bank agreed to have the substance of the Beneficiaries' claims against it adjudicated in this Court without having the probate court first address unfaithful administration and/or removal with the likely delay of a further *de novo* appeal to the superior court. Judicial economy was the underlying rationale and ultimate goal of the Consent Order.

The absence of findings or admissions, coupled with reservation of the parties' claims and defenses, while four pending actions are stayed, were the agreed parameters permitting that goal to be accomplished in this forum.

Analogous to the Bank's disposition of the Nyman Stock, without protecting the Beneficiaries' interests therein, is the executrix's sale of real estate in *Hanley v. Alarie*, 746 A.2d 125 (R.I. 2000). In *Hanley,* the Rhode Island Supreme Court held that the executrix breached her fiduciary responsibilities when she failed to obtain an independent appraisal of real estate and failed to sell the same for fair market value. While determining and securing fair market value for estate assets are not specified in R.I. GEN. LAWS § 33-17-1, the Court nonetheless held that the executrix had a duty to do so and upheld her removal by the probate court. The Court did not address the executrix's bond because the issue was not presented. Had it been raised, damages from such negligence would have been recoverable on the executrix's bond per R.I. GEN. LAWS § 33-19-24:

> **Examination of sale proceedings - Recovery of damages.** Every executor, administrator, and guardian authorized to sell real estate by decree of court shall be required, upon application to the probate court by an heir, creditor, ward, or other person interested in the estate, to make answer, upon oath, as to all matters touching his or her compliance with the decree, as fully as he or she is liable, to account and be examined in reference to the personal estate. **If there is any neglect or misconduct** of the executor, administrator, or guardian in complying with the decree, or in making the sale under the decree, **by which a person interested in the estate suffers damage, the person may recover damages for the neglect or misconduct on the probate bond or otherwise, as the case may require**. (emphasis added)

Thus, plaintiffs claims as alleged in Counts I, II and III are all actionable and damages recoverable on the Bank's bond. The Bank's attempt to limit the Beneficiaries' proof to acts of defalcation, such as misappropriation or refusal to account after citation, is as transparent as it is misleading. The Bank is liable on its bond for all acts and omissions in the administration of

Decedent's estate according to Rhode Island law and the Decedent's Will until discharged by the probate court. Instead of defending itself to judgment in four separate actions brought by certain Beneficiaries, the Bank preferred to defend a single action on its bond in this Court as authorized by the probate court in the Consent Order.

The Bank's suggestion that all ten residuary beneficiaries must be joined in this action and that anything less is an uncertified class action subject to dismissal is another red herring. Suit on bond may be brought on behalf of all interested persons by a representative group per R.I. GEN. LAWS § 33-17-25. Writs and surety for costs under the statute were not addressed because all parties, Beneficiaries and Fiduciaries alike, proceeded under the terms of the Consent Order. The Bank's protection against multiple suits would be a motion to dismiss any subsequent action due to this prior pending action.

***Conclusion***

For the foregoing reasons, the Bank's Motion to Dismiss should be denied.

Plaintiffs,
JUDITH A. LAWTON and DAVID GILMORE
By their Attorneys,

/s/ Karen A. Pelczarski
/s/ Staci L. Kolb

Karen A. Pelczarski (#3357)
Staci L. Kolb (#5451)
BLISH & CAVANAGH, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Telephone: 401-831-8900
Facsimile: 401-751-7542
kap@blishcavlaw.com
slk@blishcavlaw.com

JOAN GRANT, CAROL LINCOLN,
JANICE LEFFINGWELL and
JOYCE HENDRICKS,
By their Attorney,

/s/ Joseph A. Keough Jr.
Joseph A. Keough Jr. (#4195)
Keough & Sweeney, Ltd.
100 Armistice Boulevard
Pawtucket, RI 02860
Telephone: 401-724-3600
Facsimile: 401-724-9909
jkeoughjr@keoughsweeney.com

JOHN KIEPLER executor u/w/o Beverly
Kiepler and JANIS FISHER,
By their Attorneys,

/s/ Mark A. Sjoberg
/s/ Jennifer A. Niedzinski
Mark A. Sjoberg (#2427)
Jennifer A. Niedzinski (#6842)
Sjoberg & Votta Law Offices
200 Centerville Road, Suite 4
Warwick, Rhode Island 02886
Telephone: 401-737-9696
Facsimile: 401-737-9119
mas@sjoberglaw.com
jan@sjoberglaw.com

RAYMOND P. CYR JR.,
By his Attorneys,

/s/ Richard Tallo
Richard Tallo (#0504)
P.O. Drawer 9007
Providence, Rhode Island 02940
Telephone: 401-726-1010
Facsimile: 401-726-3406
richard@pearlmanlawoffices.com

/s/ James A. Currier
James A. Currier (#0953)
1345 Westminster Street
Providence, Rhode Island 02909
Telephone: 401-861-2200
Facsimile: 401-421-2450
currlaw@myexcel.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing PLAINTIFFS' MEMORANDUM OF LAW was filed with the Clerk of the United States District Court for the District of Rhode Island this 1st day of October, 2007 and is available for viewing and downloading to the following ECF registered counsel of record:

Mark A. Sjoberg, Esq./Sjoberg & Votta Law Offices
Jennifer A. Niedzinski, Esq./Sjoberg & Votta Law Offices
Joseph A. Keough, Jr./Keough & Sweeney
Richard Tallo, Esq.
James A. Currier, Esq.
Steven E. Snow, Esq./Partridge Snow & Hahn
Carolyn Medina, Esq./Partridge Snow & Hahn