**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THE PROBATE COURT OF THE CITY OF WARWICK, by and through JUDITH A. LAWTON, JUDITH GRANT, CAROL LINCOLN, JANICE LEFFINGWELL, JOYCE HENDRICKS, JOHN KIEPLER, as executor of the Estate of Beverly Kiepler, JANIS FISHER, DAVID GILMORE and RAYMOND P. CYR, JR.,** | : | |
| **Plaintiffs** | : | |
| **v.** | : | **C.A. No. 07-239S** |
| **BANK OF AMERICA CORP. as Co-Executor of the Estate of Magda Burt,** | : | |
| **Defendant** | : | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION TO DEFENDANT'S OBJECTION TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

The plaintiffs, the Probate Court of the City of Warwick, by and through Judith A. Lawton, Judith Grant, Carol Lincoln, Janice Leffingwell, Joyce Hendricks, John Kiepler, as executor of the estate of Beverly Kiepler, Janis Fisher, David Gilmore and Raymond Cyr, nine of the ten residuary beneficiaries of the estate of Magda L. Burt (hereinafter, collectively referred to as "plaintiffs"), bring this objection to defendant Bank of America Corp.'s (the "Bank") partial objection to Magistrate Judge Almond's Report and Recommendation dated November 13, 2007 ("Report and Recommendation").[1]

Plaintiffs brought this action against the Bank in its capacity as a co-executor of Magda L.

[1] In support of this Opposition, plaintiffs also incorporate and rely on their Memorandum of Law filed in Support of their Objection to Bank of America Corp.'s Motion to Dismiss the Complaint.

Burt's will on the Bank's bonds under the authority of the Probate Court of the City of Warwick, Rhode Island ("Probate Court") pursuant to a Consent Order ("Consent Order") entered April 6, 2006.[2] Despite insisting upon this action in this forum via the Consent Order, the Bank continues to maintain that the plaintiffs' claims against it are time barred. The Report and Recommendation, however, correctly states that the Bank's argument is not persuasive and the action is not time barred. Moreover, equitable estoppel and/or judicial estoppel should apply to preclude the Bank from asserting a statute of limitations defense.

***Argument***

**A. The Magistrate Judge Correctly Found That the Complaint Is Not Time Barred by the Statute of limitations.**

As stated in the Report and Recommendation, it is consistent with Rhode Island probate practice and procedure, and the law of the case represented by the Probate Court's orders and decrees in Decedent's estate, that fiduciaries remain liable upon their bonds unless and until they are discharged by the Probate Court as the obligee on such bonds, without time limitation. The parties agree there is no express statute of limitation under Rhode Island law for claims on probate fiduciary bonds.[3] Therefore, R.I. GEN. LAWS § 9-1-13(a), which provides that "all civil

---

[2]The plaintiffs' Complaint had three counts: Count I - Suit on Bond; Count II - Negligence; and Count III - Breach of Fiduciary Duty. With respect to Counts II and III, Magistrate Judge Almond found that "the breach of fiduciary duty, whether intentional or neglectful, i.e., negligent, is recoverable on executor's bond; and Plaintiff's intent is to plead a broad and encompassing suit on [the Bank's] 'faithful performance' bonds as contemplated by R.I. Gen. Laws § 33-17-1 *et seq.*" Report and Recommendation pp. 5-6. Thus, Magistrate Almond recommended that Counts II and III be dismissed without prejudice. The Bank does not object to that portion of the Report and Recommendation.

[3]As aptly noted in the Report and Recommendation, "most estates are accounted for and dispersed well within the ten years from the decedent's date of death. This case does not fit the mold. Magda Burt passed away over twenty years ago, and the executor's bonds in question were executed over twenty years ago. The disputed stock was sold by the Estate over twelve years ago, and the Estate has since been bogged down in disputes among the beneficiaries and various litigations." (Report and Recommendation, p. 10). The Bank as an executor bears primary responsibility for this delay as it

actions shall be commenced within ten (10) years next after the cause of action shall accrue, and not thereafter," is the statute of limitations applies to plaintiffs' claims. The disagreement among the parties is when the action "accrues" for purposes of this statute.

The Bank incorrectly argues that plaintiffs' claims "accrued" on November 6, 1995, when the stock in dispute was sold. Such argument is simply not supported by logic, Rhode Island law, or the weight of authorities that have explicitly addressed this issue.[4] Therefore, for the reasons set forth more fully below, this Court should adopt the Report and Recommendation, deny with prejudice the Bank's motion to dismiss, and allow the instant suit on the Bank's bond to proceed through pleading, discovery and trial of the genuine issues of material fact presented.

**1. The Statute of Limitations for a Suit on an Executor's Bond Starts to Run Only When There Has Been a Final Judicial Ascertainment of the Principal's Liability.**

Limitation deadlines should not be measured from individual acts or omissions within the period of administration, but from the final accounting to the probate court or the final judicial ascertainment of the personal representative's liability. The Bank's bond to the Probate Court is not a fidelity bond, actionable only for such defalcations as misappropriation; rather, the bond's scope is much broader. Under R.I. GEN. LAWS §§ 33-17-1 *et seq*., the Bank "before entering upon the execution of [its] trust" was charged upon its bond to "faithfully perform [its] duties according to law as such fiduciary" from the time of its inventory (*i.e.*, taking charge of and marshaling probate assets as soon after appointment and qualification as possible with values

---

controlled the administration of the estate.

[4]Such argument has also been refuted and is the law of the case in two pending superior court actions. *See Burt v. Rhode Island Hospital Trust National Bank*, 2006 WL 2089254 (R.I. Super. 2006) and *Kiepler v. Gates*, 2005 WL 477730 (R.I. Super. 2005).

determined as of date of Decedent's death) until the close of the estate (*i.e.*, by final accounting measured from the inventory with gains and losses, income and expenses, debts and charges, costs and fees, and final distribution disclosed), which has yet to occur – all the while administering the estate "according to law and the will of the testator." R.I. GEN. LAWS § 33-17-1 and § 33-17-2. Any act or omission of a fiduciary cognizable by a probate court in deciding whether to allow or disallow an accounting is thus actionable on that fiduciary's bond, even if it happened more than ten (10) years ago.

The Report and Recommendation correctly states that the statute of limitations for claims on a fiduciary's bond begins to run upon the final judicial ascertainment of the liability of the personal representative of an estate. *See* Report and Recommendation, at 8. *See also,* W.J. Dunn, Annotation, *When Statute of Limitations Begins to Run Against Action on Bond of Personal Representative*, 44 A.L.R.2d 807, §2 (1955). The time of "final judicial ascertainment of the liability" means: (a) the date of the only decree of distribution entered in an estate, (b) the date of the last of a series of such decrees of distribution, (c) the date of the order allowing the final account of a personal representative, or (d) the date of a decree surcharging the personal representative and subsequently settling his accounts as amended. *Id.* Essential to each definition of "judicial ascertainment of liability" is the requirement of a final accounting of the administration of the decedent's estate, which establishes the liability of the fiduciary (with or without fault) to the beneficiary. For example, a beneficiary's right to recover his or her inheritance from the fiduciary commences with the court's allowance of the final accounting and order of distribution. Further, the removal of a fiduciary generally follows a citation to account and commences the successor fiduciary's and/or interested parties' right, with probate court approval, to claim on the fiduciary's bond. The cause of action in this case "accrued" when the

Probate Court gave its authorization to bring a suit on the co-executors' bonds on April 6, 2006 and not before. This is the first "judicial ascertainment of liability" since the co-executors have yet to file a final account.

The Bank's contention that the general ten year statute of limitations should run from each of its acts and omissions over the past twenty years is untenable. The Bank is liable on its bond until it is discharged. The Consent Order makes it clear that has yet to occur. The Bank could have filed a final accounting and sought the discharge of its bond. It did not, but stipulated to having its acts and omissions adjudged in this forum. Therefore, the Bank's Motion to Dismiss should be denied and this action should be permitted to proceed as contemplated in the Consent Order.

The Bank's reliance on R.I. GEN. LAWS § 33-17-25 is also misplaced. This statute, taken out of context, is part of an arcane procedure,[5] first codified in its present form in 1905, that once involved securing and indorsing a writ from a probate court to bring suit on a fiduciary's bond. C.P.A. 1905, §981. Those forms of writ no longer exist, are not prescribed for use by the legislative probate commission, so-called, and are not available for use through the Rhode Island Secretary of State. R.I. GEN. LAWS § 33-22-16, §33-26-1. That particular historic procedure certainly was and is not a viable remedy for the plaintiffs as residuary beneficiaries of Decedent's

[5]The unusual reference in R.I. GEN. LAWS § 33-17-25 that a suit "may also be brought..." was a legislative reaction to the court's decision in an 1875 estate that a legatee's exclusive remedy against an executor was an action for accounting under the predecessor of R.I. GEN. LAWS § 33-13-10. *Municipal Court v. Henry*, 11 R.I. 563 (1877). Subsequent cases acknowledged alternative remedies but did not stray from the basic precept, relied upon by plaintiffs here, that a distributee can not sue on the bond to obtain its distributive share until an order of distribution has been passed upon by the probate court. *Id.* at 565; *Drown v. Staples*, 18 R.I. 117, 25 A. 913 (1892); *Probate Court v. Potter*, 22 R.I. 326; 47 A. 889 (1900). In other words, "judicial ascertainment" by the probate court is a prerequisite and starting point for any such claim on bond. The April, 2006 Consent Order is such a starting point regarding the plaintiffs' claims against the Bank in this case.

estate against the Bank. Notwithstanding that the terms of R.I. GEN. LAWS § 33-17-25 could not be literally applied here, the principle of that statute was adopted in fashioning the remedy under the Consent Order which is the instant action on the Bank's bond.

The Bank also argues that R.I. GEN. LAWS § 33-17-25 gives beneficiaries a cause of action whenever they "*feel* aggrieved by the actions of an executor." *See* Bank's Memorandum of Law in Support of its Objection to the Report and Recommendation, at 4. The choice of language in this argument highlights the absurdity of the Bank's position that a bar date should be predicated on an injured party *feeling* harmed. In this posture, the Bank seeks to shift the burden for prompt and efficient administration of a decedent's estate to the beneficiaries and forces them to act as watchdogs. To be clear, the beneficiaries have no duty but to await the distribution of their inheritance, and they can safely rely on the fiduciary's duty of loyalty and fair dealing to protect their inheritance and best interests until that time of final accounting and distribution. The plaintiffs' feelings aside, that time has not yet come and the Bank remains liable on its bond to them.

As indicated in the Report and Recommendation, if the Bank's position is adopted, a cause of action on the bond would accrue, and the limitations period would commence each time an executor took, or failed to take, action which was later claimed to be a breach of fiduciary duty. The administration of an estate necessarily includes many separate transactions, including many acts and omissions that could conceivably impose liability. Such practice is judicially impractical, a waste of resources, and would serve no purpose.

Additionally, the Bank argues that the Consent Order includes a broad reservation of claims and defenses, including a statute of limitations defense that was previously raised in the other pending actions. But, unlike the present action, none of the other actions were filed more

than ten (10) years after the Bank alleges the cause of action accrued. The statute of limitations defense is not applicable to any of the other pending actions. In fact, the only case in which the statute of limitations defense is even raised is *Lawton v. Bank of America Corp*., CA. No. 05-503S. However, that case was timely filed within ten years of the stock transactions at issue, by even under the Bank's argument. Therefore, such argument is also misplaced.

### 2. The Magistrate Judge Correctly Found That the Bank's Position Renders the Consent Order Meaningless.

The Report and Recommendation correctly found that the Bank's position renders the Consent Order meaningless. *See* Report and Recommendation, at 7. As this Court is well aware, various actions were pending in several different venues, including Rhode Island Superior Court in Providence County, the Rhode Island Superior Court in Kent County, the Warwick Probate Court, and this Rhode Island District Court, all prior to the time the plaintiffs filed this case. In each of these actions, virtually the same claims of negligence and breach of fiduciary duty that are pending here were asserted against the Bank. The parties created this new action as a mechanism for judicial economy and as an accommodation to the Bank, again as aptly noted by the Report and Recommendation,

> in an effort to bring some order to this mess, the parties agreed to the Consent Order whereby the Probate Court authorized Count I and agreed to hold the inventories and accounting "nisi without finding" and without discharging the executor's bonds while a suit on the bonds was pursued.

Report and Recommendation, at 10.

To now argue that the statute of limitations applies to preclude this action is incongruous. The Consent Order was entered on April 6, 2006, which is more than ten (10) years after the Bank alleges the claims on its bonds accrued. Thus, according to the Bank, the parties bargained for the initiation of a time-barred suit on the bonds. The plaintiffs would never have agreed to go

through the exercise of filing this Complaint, while they have other actions pending against the Bank for virtually the same claims, had they believed their claims would not be adjudicated on the merits in one forum. To do so, as the Report and Recommendation states, renders the Consent Order "meaningless." Pursuant to the explicit language of the Consent Order, which required the parties to either "stay" or "dismiss" their other pending actions, the plaintiffs can revive their claims "without prejudice."

According to the Bank's argument, there is simply no benefit to the plaintiffs, nor to the Probate Court, by agreeing to the Consent Order, because the suit on the Bank's bonds is time barred. What was the plaintiffs' *quid pro quo* for agreeing to the Consent Order? Magistrate Judge Almond asks the "practical" question, "If [the Bank] is correct, what was the purpose of the Consent Order?" The Bank has not and still cannot answer this straightforward question. At best, the Bank acknowledges the Consent Order "brought order to a chaotic situation for all parties." *See* Bank's Memorandum of Law in Support of its Objection to the Report and Recommendation, at. 9. However, the value of "order" to any of the parties is meaningless, if this action is dismissed and the parties are left to proceed with their individual actions or if all their previously timely filed claims against the Bank are also time barred as the Bank argues. Instead of defending itself to judgment in four separate actions brought by certain plaintiffs, the Bank preferred to defend a single action on its bond in this Court as authorized by the probate court in the Consent Order. It should not now be permitted to render that Order meaningless.

**3. Res Judicata Would Not Have a Preclusive Effect on the Other Pending Cases.**

As an initial matter, this Court need not decide this issue as it is not before it. However, the Bank argues that a finding that this action is time barred "would be a determination on the

merits that would end this litigation and would preclude the resurrection of any of the stayed cases." *See* Bank's Memorandum of Law in Support of its Objection to the Report and Recommendation, at 7. Such argument, however, is simply not accurate. The Bank strictly construes the language of the Consent Order when it serves the Bank's benefit (*i.e.,* "preserving all defenses"); yet, chooses to ignore the Consent Order's clear language when it is unfavorable. The explicit terms of the Consent Order allow the plaintiffs to "stay or dismiss" the other pending cases. All of the other pending cases were brought long before even the Bank argues that the statute expires. In fact, in both *Burt v. Rhode Island Hospital Trust National Bank*, 2006 WL 2089254 (R.I. Super. 2006) and *Kiepler v. Gates*, 2005 WL 477730 (R.I. Super. 2005), it has already been ruled that cases are not time barred.

The Report and Recommendation aptly notes that the Consent Order includes a "broad" agreement to stay or dismiss without prejudice the pending individual actions. Thus, if the Bank prevails, the plaintiffs would clearly seek to revive those various actions and the parties would be in the same position as they were prior to entering into the Consent Order. *See* Report and Recommendation, p. 8. Accordingly, a finding that this matter is time barred will not result in ending all litigation pending against the Bank.

**4. Alternatively, Equitable Estoppel and Judicial Estopped Apply to Prevent this Action from Being Time Barred.**

Although not explicitly relied on in the Report and Recommendation, but equally valid grounds for denying the Bank's Motion to Dismiss, are the doctrines of equitable estoppel and judicial estoppel. Statutes of limitations are not jurisdictional and are subject to equitable principles. *E.g., Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96 (1990); *Mercado v. Ritz-Carlton San Juan Hotel, Spa and Casino,* 410 F.3d 41, 48 (1st Cir. 2005). Under the

circumstances presented in this matter, it is difficult to imagine a situation where equity would be more aptly applied than here.

In this case, the Bank only entered into negotiations and agreed to the terms of the Consent Order *after* the alleged statute of limitations passed. It would be entirely inequitable to allow the Bank to engage in a pattern of conduct which caused plaintiffs to accommodate the Bank and file their complaint in this action, and then be allowed to benefit from the protections of that statute. Additionally, judicial estoppel should be applied to prevent the Bank from changing its position before this Court. In opposing a challenge to the validity of the Consent Order and the lawsuit it authorized, the Bank joined with the plaintiffs. Now, however, the Bank has changed its position and claims that the suit is time barred. Such somersaulting undermines the integrity and efficacy of the judicial system. Thus, the Bank should not now be permitted to enjoy any benefits of changing its position before this Court.

Moreover, the Bank is not prejudiced in any way by applying these equitable principles. Based on all the other pending cases, the Bank has been aware of the claims against it and has even been litigating those claims for several years. The filing of this action in federal court was intended to streamline this excessive and repetitive litigation as an accommodation to the parties, but primarily as a benefit to the Bank, who would otherwise have had to continue to litigate in all of the various venues.

## *Conclusion*

For the foregoing reasons, this Court should overrule the Bank's Objection and adopt the Report and Recommendation.

Plaintiffs,
JUDITH A. LAWTON and DAVID GILMORE
By their Attorneys,

/s/ Karen A. Pelczarski
/s/ Staci L. Kolb
Karen A. Pelczarski (#3357)
Staci L. Kolb (#5451)
BLISH & CAVANAGH, LLP
Commerce Center
30 Exchange Terrace
Providence, RI 02903
Telephone: 401-831-8900
Facsimile: 401-751-7542
kap@blishcavlaw.com
slk@blishcavlaw.com

JOAN GRANT, CAROL LINCOLN, JANICE LEFFINGWELL and JOYCE HENDRICKS,
By their Attorney,

/s/ Joseph A. Keough Jr.
Joseph A. Keough Jr. (#4195)
Keough & Sweeney, Ltd.
100 Armistice Boulevard
Pawtucket, RI 02860
Telephone: 401-724-3600
Facsimile: 401-724-9909
jkeoughjr@keoughsweeney.com

JOHN KIEPLER executor u/w/o Beverly
Kiepler and JANIS FISHER,
By their Attorneys,

/s/ Mark A. Sjoberg
/s/ Jennifer A. Niedzinski
Mark A. Sjoberg (#2427)
Jennifer A. Niedzinski (#6842)
Sjoberg & Votta Law Offices
200 Centerville Road, Suite 4
Warwick, Rhode Island 02886
Telephone: 401-737-9696
Facsimile: 401-737-9119
mas@sjoberglaw.com
jan@sjoberglaw.com

RAYMOND P. CYR JR.,
By his Attorneys,

/s/ Richard Tallo
Richard Tallo (#0504)
P.O. Drawer 9007
Providence, Rhode Island 02940
Telephone: 401-726-1010
Facsimile: 401-726-3406
richard@pearlmanlawoffices.com

/s/ James A. Currier
James A. Currier (#0953)
1345 Westminster Street
Providence, Rhode Island 02909
Telephone: 401-861-2200
Facsimile: 401-421-2450
currlaw@myexcel.com

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing PLAINTIFFS' MEMORANDUM OF LAW was filed with the Clerk of the United States District Court for the District of Rhode Island this 6th day of December, 2007 and is available for viewing and downloading to the following ECF registered counsel of record:

Steven E. Snow, Esq./Partridge Snow & Hahn
Carolyn Medina, Esq./Partridge Snow & Hahn

/s/ Staci L. Kolb